**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Felipe Petrone-Cabanas,<br>Petitioner<br>-vs-<br>Ryan Thornell, et al.,<br>Respondents. | CV-25-1431-PHX-DWL (JFM)<br><br>**Report & Recommendation on Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. LEGAL BACKGROUND

Given the nature of the claims, an initial review of the legal background is helpful to analyzing the factual and procedural background.

**Federal Constitutional Law** - Petitioner's Petition asserts claims solely on the basis of the post-conviction decision in *Miller v. Alabama*, 567 U.S. 460 (June 25, 2012) that a mandatory natural life sentence (*i.e.* life without the possibility for parole) for a juvenile offender is a denial of the Eighth Amendment's ban on cruel and unusual punishment, because it did not allow for consideration of the defendant's youthful characteristics.[1]

[1] In 2005, in *Roper v. Simmons*, 543 U.S. 551 (2005), the Court had found the death penalty to be cruel and unusual punishment for a juvenile offender.

As subsequently made clear in *Jones v. Mississippi*, 593 U.S. 98 (2021), *Miller* did not impose "a formal fact finding process" nor even a "finding of fact regarding a child's incorrigibility," but instead "mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence." *Jones*, 593 U.S. at 101 (quoting *Miller*, 567 U.S. at 483 and *Montgomery v. Louisiana*, 577 U.S. 190, 211 (2016)).

**<u>Arizona Sentencing Law for Murder</u>** – At the time of Petitioner's offense in 1999:

> Arizona Revised Statutes section 13-703(A) listed three potential penalties for first-degree murder: (1) death; (2) "natural life," Arizona's term for life without the possibility of release; and (3) life with the possibility of release (in some form, such as parole or commutation) after 25 years of imprisonment, or after 35 years of imprisonment if the victim was less than 15 years old. Ariz. Rev. Stat. § 13-703(A) (1998).

*Jessup v. Shinn*, 31 F.4th 1262, 1263 (9th Cir. 2022).[2] The provision for a life-with-opportunity-for-parole sentence was problematic because:

> persons serving life sentences for crimes committed in 1994 or later were ineligible for parole. In 1993, the Arizona legislature had eliminated parole for crimes committed in 1994 or later, and the legislature had replaced parole with a credit system for early release. Moreover, the early-release credits were unavailable for persons serving a life sentence, even if that sentence nominally included a possibility of parole.

*Id.* at 1266–67 (citations omitted).[3] Those statutory changes, however, were largely ignored by the judicial and executive branches, and the bar. In *Jessup*, the Ninth Circuit observed:

> The Arizona reporter is full of cases in which the sentencing judge mistakenly thought that he or she had discretion to allow parole. *E.g., Chaparro v. Shinn*, 248 Ariz. 138, 459 P.3d 50, 52 (2020); [*State v.*]

---

[2] In Arizona, "trial courts since 1994 have interchangeably used the words 'parole' and 'release' when imposing non-natural-life sentences." *State v. Anderson*, 257 Ariz. 226, 231, 547 P.3d 345, 350 (2024).

[3] Respondents make the plausible explanation that the confusion resulted from the legislature's failure to remove references to parole from individual sentencing statutes. (Answer, Doc. 17 at 10.) However, *ex post facto* concerns may have prompted that approach, because pre-1994 crimes would still be subject to parole.

> *Vera*, 334 P.3d [754,] 755 [(Ariz. Ct. App. 2014)]. A district court recently noted that, "[d]espite the elimination of parole, prosecutors continued to offer parole in plea agreements, and judges continued to accept such agreements and impose sentences of life with the possibility of parole." *Viramontes v. Att'y Gen.*, No. CV-16-00151-TUC-RM, 2021 WL 977170, at *1 (D. Ariz. Mar. 16, 2021).

31 F.4th at 1268. Indeed, the Arizona Supreme Court has recently observed there was: "pervasive confusion by both bench and bar about parole availability after it was abolished in Arizona." *State v. Anderson*, 257 Ariz. 226, 229, 547 P.3d 345, 348 (2024). Similarly, the state's prison system's "policies as recently as 2021 were unclear about whether inmates…who were sentenced to other than natural life sentences were eligible for parole." *Id.* at 231, 547 P.3d at 350.

As claims began to be filed pursuant to *Miller*, the Arizona legislature reacted in 2014 with a retroactive reinstitution of parole-eligibility for juvenile offenders who were actually sentenced to life with the possibility of parole. *See* Ariz. Rev. Stat. § 13-716 (2014).

## III. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

The following summary of the facts is drawn from the presentence investigation, summarizing police reports. (Exh. G, Present. Rep. at 1.)

> On March 26, 1999, the defendant and codefendants [ ] were involved in the murder of Phoenix Police Officer Marc Atkinson. Prior to this incident, Officer Atkinson had made previous contact with the defendants regarding their presence at a neighborhood bar parking lot, and they were directed to leave. Minutes later the defendants returned and Officer Atkinson began to follow them. The codefendants bailed out of the vehicle and the defendant remained inside. While Officer Atkinson chased a codefendant, the defendant waited in the vehicle and shot Officer Atkinson from the side. The defendant then pointed a .357 magnum revolver at [a bystander] before attempting to escape by backing up into [the bystander's] vehicle. [The bystander] shot the defendant in the shoulder and detained him while police arrived. The defendants were driving a stolen vehicle. Officers seized a large amount of cocaine, a loaded nine-millimeter handgun, and a loaded twelve-gauge shotgun from inside the vehicle.

(Exh. G, Present. Rep. at 1.) Petitioner was 17 years old at the time of the offense. (Exh. U, Mem. Dec. 8/22/17 at ¶ 2.)

/ /

**B. PROCEEDINGS AT TRIAL**

On April 2, 1999, Petitioner was indicted with two co-defendants in the Maricopa County Superior Court. Petitioner was charged with: conspiracy to sell/transport narcotics; first degree murder; sale/transport of narcotics; aggravated assault; attempted first degree murder; and weapons misconduct. (Exh. A, Indict. 4/2/99.) In a separate indictment filed on May 10, 1999, Petitioner was indicted on one charge of first degree murder of an officer in the line of duty. (Exh. B, Indict. 5/10/99.)

On July 19, 2001, Petitioner appeared with counsel and without benefit of a plea agreement pled guilty to the murder charge from the second indictment, and the other charges from the original indictment. (Exh. C, M.E. 7/19/01; Exh. D, R.T. 7/19/01.) At the hearing, the judge described the possible sentences on the murder charge to include a life-with-parole sentence:

> THE COURT: Count 2 charges you with murder in the first degree, a Class 1 felony. There are two possible penalties for this offense: a sentence of death-by lethal injection or a sentence of life. There are two alternative life sentences that can be imposed by the Court. One is called natural life which means you are locked up and you will never get out of -- never not be locked up. You will die in prison. You have no opportunity to ever be released. **The other is called simply a life sentence and that is the sentence imposed where you are eligible to apply for release in 25 years, after 25 calendar years of service.**

(Exh. D, R.T. 7/19/01 at 7 (emphasis added).)

Petitioner proceeded to sentencing hearings on January 18, January 31, February 1, and February 12, 2002. (Exh. H, Spec. Verd. at 1.) The transcripts of the sentencing hearings were lost. (Exh. DD, SA Mem. Dec. 11/29/18 at ¶ 8.)

However, on February 20, 2002, the trial court entered a special verdict (Exh. H). The judge described the decision as one between the death penalty "or a sentence less severe than death." (*Id.* at 2.)

Regarding age in particular, the judge's special verdict explicitly considered Petitioner's age at the time of commission, "intelligence, maturity, involvement in the crime and other mitigating factors" (*id.* at 19), his "family and community instilled in him

a strong sense of right and wrong and a strong moral foundation" (*id.* at 20), that as a result of his immigrating by himself all of his "anchors of stability had been hoisted" and his "young age helps explain why a young man who had never before been in trouble, who knew right from wrong and who had been provided a strong moral foundation during his formative years by his parents, family and community, became unhinged from his strong moral underpinnings", that he "lacked substantial judgment" (*id.* at 21), had "significant impulsivity" (*id.* at 24), and "that juvenile impulsivity played an important part in defendant's decision to shoot Officer Atkinson" (*id.* at 25). The judge concluded: "it is evident that Arizona law requires that Mr. Petrona's age of 17 years and 8 months at the time he murdered Officer Atkinson be accorded very substantial weight in mitigation. (*Id.* at 26.)

The judge found the state had proved beyond a reasonable doubt the aggravating factor of a victim-in-the-line-of-duty, that Petitioner had proved the mitigating factors of age, remorse, acceptance of responsibility, lack of prior criminal history, prior good character, and amenability to rehabilitation. (*Id.* at 28.) The judge nonetheless concluded to impose a natural life sentence ("life and not be released on any basis for the remainder of his natural life"). (*Id.* at 29; Exh. I, Sentence 2/20/2002 at 2.)

**C. NO DIRECT APPEAL**

In his Petition, Petitioner asserts he filed a direct appeal. (Pet., Doc. 1 at 2.) He asserts the notice of appeal was filed on May 21, 2002, and he lists case number "1 CA-CR 02-0090." (*Id.*) Respondents argue no appeal was filed by Petitioner, and that co-defendant Oberlin Cabanas-Salgado filed his direct appeal on that date.

Indeed, he did. (Exh. K, Not. App. 5/21/02.) Oberlin's direct appeal was Arizona Court of Appeals case 1 CA-CR 02-0456, and was filed after a trial to the court. *See State v. Cabanas-Salgado*, 208 Ariz. 195, 196, 92 P.3d 421, 422 (Ct. App. Div. 1, 2003).

The trial court's docket on the original indictment (case 1999-4790), which was a combined docket for all three defendants, shows a single Notice of Appeal filed on May

21, 2002. (Exh. XX, 1999-4790 Docket at 7 (Doc. 17-6 at 50).) The trial court's docket on the second indictment (case 1999-6656) reveals no such notice on May 21, 2002. (Exh. YY, 1999-6656 Docket at 22 (Doc. 17-6 at 90).)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz. R. Crim. P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

Accordingly, the undersigned finds that Petitioner did not file a direct appeal.

## D. PROCEEDINGS ON POST-CONVICTION RELIEF

**Proceedings on PCR Petition** – Over 11 years later, on June 25, 2013, Petitioner commenced his post-conviction relief (PCR) proceeding by filing a PCR Notice (Exh. M).[4] Counsel was appointed who eventually filed a Petition (Exh. N) asserting a violation of then recent case, *Miller v. Alabama*, 567 U.S. 460 (2012), which concluded that a mandatory natural life sentence of a minor offender constitutes cruel and unusual punishment prohibited by the Eighth Amendment. On September 10, 2015 the PCR court denied the petition. (Exh. P, Order 9/10/25.)

Petitioner sought review by the **Arizona Court of Appeals**. (Exh. Q, PCR PFR.) On August 22, 2017 that court granted review and relief, and remanded for a new evidentiary sentencing hearing.

On remand, while the matter was pending before the PCR court, Petitioner filed two **special action petitions**. The first challenged the PCR court's evidentiary ruling requiring Petitioner to disclose his medical and mental health records. (Exh. X, SA Pet. 18-0099) The second noted that transcripts of the original sentencing had been lost, and challenged the order for an evidentiary hearing to "recreate" the original sentencing and to include testimony from the sentencing judge. (Exh. AA, SA Pet. 18-0119.) The Arizona Court of Appeals accepted jurisdiction of both and granted relief, vacating the

[4] Respondents provide a PCR notice filed by co-defendant Cabanas-Salgado on August 11, 2020. (Exh. EE.) The undersigned finds no relevance to this filing. Petitioner asserts only one PCR proceeding (Doc. 1 at 4-5), and that is what the record provided reflects.

order for disclosure of medical and mental health records, and the order for the sentencing judge to testify. (Exh. DD, SA Mem. Dec. 11/29/18.)

The PCR court then set a limited evidentiary hearing. (Exh. FF, M.E. 11/20/20). Before it was conducted, the State filed a Motion to Vacate the hearing and dismiss the Petition based on clarification of the law wrought by the then-recent decision in *Jones v. Mississippi*, 593 U.S. 98 (2021) (eschewing any mandate in *Miller* for special findings or explanation on permanent incorrigibility).

The PCR granted the motion to dismiss. (Exh. JJ, Order 10/6/21.)

**Proceedings on Review** - Petitioner sought review by the Arizona Court of Appeals. (Exh. KK, PCR PFR.) The Arizona Court of Appeals granted review, vacated the dismissal and remanded for further proceedings. (Exh. NN, Mem. Dec. 6/21/22.) The State sought review by the Arizona Supreme Court (Exh. OO), which vacated and remanded to the Court of Appeals for further proceedings in light of its intervening decision in *State v. Cooper/Bassett*. (Exh. QQ, Order 9/19/23). On remand, the Arizona Court of Appeals again, granted review, but **denied relief on December 6, 2023**.[5] (Exh. TT, Order 12/6/23.).

Petitioner again sought review (Exh. UU) by the Arizona Supreme Court. On June 3, 2024 the Arizona Supreme Court summarily denied review (Exh. VV).

## E. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner, presently incarcerated in the Arizona State Prison Lewis Complex at Buckeye, Arizona, commenced the current case on April 28, 2025 by filing his *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner's Petition raises "one ground for relief, asserting that his natural life sentence violates the Eighth Amendment." (Order 7/2/25, Doc. 6 at 2.) In particular, Petitioner argues that Arizona had abolished parole in 1994 and thus a natural life sentence was

[5] As discussed hereinafter, this is the last reasoned decision by the state appellate courts on Petitioner's *Miller* claim, and thus the one under review herein.

effectively the only available sentence.

**Counsel Appointed** – On August 11, 2025, the Court granted Petitioner's motion to appoint counsel, appointed the Federal Public Defender to represent Petitioner, set a deadline for any motions to amend the petition, and extended the time for an answer to permit consideration of any such motion to amend. (Order 8/11/25, Doc. 14.) No such motion to amend was ever filed.

**Response** - On October 14, 2025 Respondents filed their Answer (Doc. 17). Respondents argue that Petitioner's claim is without merit because (notwithstanding pervasive confusion in the Arizona courts, bar and law enforcement whether parole remained available) the sentences considered by the Court included life with a possibility of parole (which was ultimately re-authorized by subsequent statutory amendments) and the court considered Petitioner's youth and chose natural life over life-with-the-possibility-of-release.

**Reply and Withdrawal** – Petitioner was given through December 8, 2025 to reply in support of the Petition. No reply was filed.

Instead, counsel filed a Motion to Withdraw (Doc. 24) asserting no basis to reply based on a conclusion that the claim is without merit, and invoking procedures applicable to appellate counsel seeking to withdraw under *Anders v. California*, 386 U.S. 738, 744–45 (1967). A deadline was set for Petitioner to respond to the Motion to Withdraw and to lodge a proposed *pro per* reply in support of the Petition. (Order 12/9/25, Doc. 25.)

Petitioner filed a Motion to Replace Counsel (Doc. 28), asserting the unavailability of counsel to consult, and a variety of additional possible claims. The Court denied the Motion to Replace Counsel, noting the deadline to amend the petition had passed and there was no showing that additional claims were not procedurally defaulted or barred by the habeas statute of limitations. Nonetheless, counsel was directed to confer with Petitioner, and supplement the Motion to Withdraw. Respondents and Petitioner were authorized to respond, and the deadline for Petitioner's proposed *pro per* reply was reset. (Order 1/27/26, Doc. 29.)

Respondents responded (Doc. 31) to the Motion to Withdraw, taking no position on it.

Counsel then filed a Supplemental Motion to Withdraw (Doc. 30) asserting consultation with Petitioner on additional claims and asserting there were none to be raised that would be timely and not procedurally defaulted. Petitioner filed a Response ("Petitioner's Update with Supporting Affidavit") (Doc. 31) confirming consulting with counsel, complaining that counsel simply argued to him cases and counsel's inability to win the case, and urging the court to permit an inmate (Barnes) to represent him. Petitioner appends an affidavit from Barnes and a contract between Petitioner and Barnes for "a professional level of service" regarding Petitioner's "criminal case of Az v. Felipe Petrone Cabanas."

Petitioner's deadline to lodge a proposed reply was extended from March 24, 2026 to May 8, 2026. (Order 3/24/26, Doc. 34.) Petitioner sought another extension, of 60 days, which was denied on the basis that it was founded upon continuing attempts to raise new claims. The Court deferred ruling on the Petition and Motion to Withdraw for 14 days to permit a renewed motion to extend. (Order 5/12/26, Doc. 36.)

Petitioner then filed a "Notice to the Court" (Doc. 37) appending a letter asking counsel to seek an additional extension to conduct additional research. The Court noted that Petitioner had already had over six months to prepare his *pro per* reply and declined to delay further. (Order 5/29/26, Doc. 38.)

To date, Petitioner has not lodged a proposed *pro per* reply.

## IV. WITHDRAWAL OF COUNSEL

In *Anders v. California*, the Court held that the right to counsel requires appellate counsel who "acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae." 386 U.S. 738, 744 (1967). However, because counsel has professional duties as well:

> if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be

> accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

*Id.*

In this habeas case, of course, Petitioner has no Sixth Amendment right to counsel. *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir.), *cert. denied*, 479 U.S. 867 (1986). At best he has a statutory one under 18 U.S.C. § 3006A(a)(2), and a due process right, pursuant to which Petitioner's counsel was appointed. (*See* Order 8/11/25, Doc. 14.) Moreover, what is at issue is not an appellate brief, nor even a habeas petition, but rather a habeas reply.

However, the Ninth Circuit has applied the *Anders* approach in habeas proceedings, at least on appeal, as provided in its Ninth Circuit Rule 4-1(c)(6). However, the court observed the limited issues at play given the limitations of habeas appeals to issues raised in a certificate of appealability, and noted that "[t]he Anders filing in a habeas appeal, and the court's review, will not precisely parallel that in a direct appeal." *See Graves v. McEwen*, 731 F.3d 876, 880 (9th Cir. 2013).

Petitioner is not in the position of an appellant who has yet to raise claims. Petitioner has already filed his Petition, and briefing has proceeded on the claim he raised. And like in *Graves*, new claims are circumscribed. The time for amendments to the Petition has expired. Moreover, given the habeas statute of limitations, the types of claims that could now be presented are sharply circumscribed. Moreover, Petitioner's state appellate challenges have been limited to the issue raised in the Petition, creating the likelihood that additional claims would be procedurally defaulted. And, to date, Petitioner has not presented any such claims in anything but purely conclusory fashion.

There is nothing before the Court to suggest that there are additional, non-frivolous claims to be raised by counsel. Petitioner was apprehended by an eyewitness bystander at whom he had pointed a gun and had attempted to ram with his car, and was shot and then detained by the bystander until additional officers arrived. The record reveals no basis for

a plausible defense at trial, or challenges to the evidence. Counsel utilized Petitioner's remorse and acceptance of responsibility, along with myriad other mitigating factors, including his youth, to argue for a lower sentence of life with possibility of release. The record reveals no additional procedural claims to be raised in post-conviction proceedings or in this habeas proceeding.

It is true that this Court has not been provided all the evidence and transcripts at trial. But there appears no reason to believe that any claims now raised would not be limited to evidence presented to the state appellate courts under 28 U.S.C. § 2254(d) and (e).

The only task plainly remaining for habeas counsel is a reply in support of the Petition. But, for the reasons discussed hereinafter, the undersigned concludes that, in light of Ninth Circuit precedent, there are no non-frivolous arguments to be mounted by counsel in a reply.

Accordingly, the undersigned will recommend that Petitioner's counsel be permitted to withdraw, and that the Petition be addressed on the existing briefs and record.

## V. MERITS OF CLAIM

### A. ARGUMENTS

Petitioner argues that his sentence violated *Miller* because parole was legally-unavailable as an option at sentencing, effectively making death[6] or life without parole the only sentencing option, and thus natural life was effectively mandatory. Petitioner further argues that his sentence was a violation of *Miller* because the trial court actually found Petitioner's actions were the result of his juvenile lack of judgment and impulsivity, and

---

[6] Respondents argue that despite being listed in the statutes as an alternative punishment, death was eliminated as a possibility for juvenile offenders (like Petitioner) by the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551, 578 (2005). But that case was decided long after Petitioner was sentenced. Indeed, when accepting Petitioner's plea, the trial court made clear that (even after the guilty plea) there remained a "possibility of you being sentence to death." (Exh. D, R.T. 7/19/01 at 7.) The undersigned assumes *arguendo*, in Petitioner's favor, that the possibility of a death sentence did not render the natural life sentence non-mandatory for purposes of applying *Miller* and its progeny. *But see Tatum v. Ryan*, CV-15-0711-PHX-DJH-JFM, Report & Recommendation, 4/3/26, Doc. 92 at 25-26 (concluding availability of death irrelevant to *Miller* analysis).

that he was capable of rehabilitation. (Petition, Doc. 1 at 6.)

Respondents argue that the state appellate court's December 6, 2023 decision in Petitioner's PCR proceeding is the last reasoned decision on Petitioner's claim, and that it survives deferential review under 28 U.S.C. § 2254(d).

## B. STANDARD OF REVIEW

### 1. Last Reasoned Decision

A federal habeas court reviews the "last reasoned decision" by a state court, and if necessary looks through a higher court's summary decision to a lower court's reasoned decision. *Cannedy v. Adams*, 705 F.3d 1148, 1158 (9th Cir. 2013). Here, Petitioner's *Miller* claim was finally rejected by the Arizona Supreme Court in its denial of review on June 3, 2024 (Exh. VV). However, that was a summary ruling. Accordingly, this Court looks through it to the Arizona Court of Appeals' reasoned decision on February 5, 2024 (Exh. TT).

### 2. 2254 Limitations

While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief. Where, as here, the state court has rejected a claim on the merits, to justify habeas relief based on legal error, a state court's merits-based decision must be "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted. 28 U.S.C. §2254(d)(1). Similarly, the habeas courts may grant habeas relief based on factual error only if a state-court merits decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S.

86, 102–03 (2011).

Petitioner does not argue any factual error, only that the Arizona Court of Appeals' rejection of Petitioner's *Miller* claim was an unreasonable application of Supreme Court law in *Miller*. (Petition, Doc. 1 at 6.)

**C. NATURAL LIFE SENTENCE**

Petitioner's *Miller* claim is foreclosed by the Ninth Circuit's decision in *Jessup v. Shinn*, 31 F.4th 1262, 1263 (9th Cir. 2022). The Ninth Circuit has summarized that decision as follows:

> And in *Jessup v. Shinn*, we explained that Miller "requires, for a juvenile offender, an individualized sentencing hearing during which the sentencing judge assesses whether the juvenile defendant warrants a sentence of life with the possibility of parole." We held that Jessup's sentencing hearing did not violate *Miller* because the sentencing judge considered the petitioner's "age and other relevant considerations" before concluding that he did not warrant any form of release.

*Crespin v. Ryan*, 46 F.4th 803, 808 (9th Cir. 2022) (citations omitted). In *Jessup*, the Court found the elimination of parole irrelevant because the sentencing judge had:

> after fully considering Petitioner's age and other relevant considerations, concluded that Petitioner did not warrant any form of release. Necessarily, then, the sentencing judge concluded that Petitioner did not warrant a possibility of parole, which is one form of release.

41 F.4th at 1267. The court rejected the argument that a sentence that included parole would have been legally unenforceable.

> Petitioner has shown only that a hypothetical defendant who received a lenient sentence would have a strong *Miller* claim. That is, if a sentencing judge determined that a hypothetical defendant warranted the possibility of release or parole, but the state courts nevertheless refused to permit parole, then that hypothetical defendant would have a strong *Miller* claim. But the reason why such a *Miller* claim would be viable proves why this hypothetical does not help Petitioner: that *Miller* claim would have merit because the sentencing judge concluded that the defendant warranted a possibility of release or parole. Here, by contrast, the sentencing judge determined—considering Petitioner's age and the characteristics of youth—that Petitioner warranted a sentence without any possibility of any form of release. Accordingly, in Petitioner's circumstances, it was reasonable for the state court to distinguish *Miller*.

*Id.* at 1268.

Similarly, here, Petitioner's sentencing judge believed parole was a possibility. (*See* Exh. D, R.T. 7/19/01 at 7.) Nonetheless, the judge determined – considering Petitioner's youthful characteristics – that he warranted a natural life sentence without the possibility of release.

It is true that the Arizona Court of Appeals relied solely on the decision in *State ex rel. Mitchell v. Cooper (Bassett, real party in interest)*, 256 Ariz. 1, 535 P.3d 3 (Sept. 18, 2023) (herein "*Bassett*") to explain its ruling in Petitioner's case. And, unlike *Jessup*, the *Bassett* court initially purported to not look to the trial court's belief that parole was available to find that natural life was not a mandatory sentence. Instead, the *Bassett* court purported to treat the issue as a matter of statutory interpretation, and relied on the statutory mandate that Arizona courts consider youthful characteristics at sentencing. *Bassett* at 10, ¶¶34-36, 535 P.3d at 12. But consideration of such issues is meaningless if the sentencer believes that natural life is the only option. *See Crespin v. Ryan*, 46 F.4th 803, 811 (9th Cir. 2022) (*Miller* not satisfied where sentencing judge disclaimed authority to impose other than natural life sentence).

Under Arizona's then-*actual* law, a judge could conclude that in light of his youthful characteristics a defendant absolutely did not deserve a natural life sentence, but would have had no option but to impose it (unless he had concluded death was appropriate). Thus, such a mandate is not for actual consideration just idle discussion. And the *Bassett* court offered no determination that a trial judge who actually read the law correctly and knew parole was not available, could have still properly included it in a sentence. (Eventually, the *Bassett* court got around to relying on *Jessup* and its analysis founded upon the judge's mistaken beliefs in the availability of parole. *Id.* at 10-11, ¶¶ 37-38, 535 P.3d at 12-13.)

But even if this Court could conclude that *Bassett* was contrary to Supreme Court law, within the meaning of 28 U.S.C. § 2254(d), Petitioner would still not be entitled to relief under the precedent and reasoning of the Ninth Circuit in *Jessup*, which is binding

on this Court.

**D. YOUTHFUL CHARACTERISTICS AND CORRIGIBILITY**

Petitioner also argues that his natural life sentence violated *Miller* because the sentencing judge had found his crime to have been a result of his youthfulness and that he could be rehabilitated. But the Ninth Circuit has concluded that *Miller* did not mandate an absence of such characteristics to impose a natural life sentence, only their consideration.

> In *United States v. Briones*, we affirmed an LWOP sentence imposed at a post-*Miller* resentencing hearing. 35 F.4th 1150, 1153, 1159 (9th Cir. 2021). We rejected the argument that *Miller* required a finding of incorrigibility before LWOP could be imposed, emphasizing that "a 'discretionary sentencing system is both constitutionally necessary and constitutionally sufficient,' because such discretion 'suffices to ensure individualized consideration of a defendant's youth.' " *Id*. at 1156 (quoting *Jones*, 141 S. Ct. at 1313, 1321).

*Crespin*, 46 F.4th at 808. In *Briones*, the judge had considered the defendant's "history of the abusive father, the defendant's youth, immaturity, his adolescent brain at the time, and the fact that it was impacted by regular and constant abuse of alcohol and other drugs." *Briones*, 35 F.4th at 1155. Nonetheless, a natural life sentence was imposed.

Here, the sentencing judge explicitly considered Petitioner's youthful characteristics and corrigibility, and even though finding them, nonetheless imposed a natural life sentence. The Eighth Amendment did not require anything more than the consideration applied by the trial judge in Petitioner's case.

In rejecting Petitioner's claims the Arizona Court of Appeals relied entirely on the decision in *State ex rel. Mitchell v. Cooper (Bassett, real party in interest)*, 256 Ariz. 1, 535 P.3d 3 (Sept. 18, 2023) (herein "*Bassett"*). That decision reached the same conclusion expressed by the Ninth Circuit in *Briones*. Like in *Briones*, the Arizona Supreme Court found no finding of specific characteristics (or their absence) necessary under *Miller*, only consideration of such matters before imposing a natural life sentence. *Bassett* at 9, 535 P.3d at 11.

**E. CONCLUSION**

Based on the foregoing, the undersigned concludes that the Petition is without merit and must be denied.

## VI. CERTIFICATE OF APPEALABILITY

The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## VII. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED:**

(A) Petitioner's counsel's Motion to Withdraw (Doc. 24) be **GRANTED** .

(B) Petitioner's counsel's Supplemental Motion to Withdraw (Doc. 30) be **GRANTED**.

(C) Petitioner's counsel be **DEEMED WITHDRAWN**.

(D) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

(E) To the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VIII. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

However, pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: August 12, 2026

25-1431r RR 26 08 05 on HC.docx

James F. Metcalf
United States Magistrate Judge